JUAN MERCADER, Petitioner, *v.* SUPERIOR COURT, SAN JUAN PART, ANTONIO S. ROMERO, JUDGE, Respondent; SECRETARY OF THE TREASURY, Intervener.

No. 2184. Argued January 14, 1957.—Decided March 20, 1957.

*Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella* and *C. Morales, Jr.,* for petitioner; *José Trías Monge, Attorney General (J. B. Fernández Badillo, Acting Attorney General,* on reply brief of intervener) and *J. C. Santiago Matos, Assistant Attorney General,* for intervener, defendant in the main action.

PER CURIAM.

On September 15, 1953, the Secretary of the Treasury notified the petitioner of certain deficiencies for the years 1944 to 1950, totalling $59,703.93. Within the extension of time granted therefor, the taxpayer applied in writing for a reconsideration and an administrative hearing on the matter. The Secretary of the Treasury informed the taxpayer that his application did not meet the requirements provided by law for a petition for reconsideration, since it failed to state the grounds of his objections to the determination made by the Secretary; and that unless he presented a statement of the loans and payments received, indicating the dates and amounts, he would act as if the taxpayer had not requested reconsideration of the matter. The taxpayer again wrote to the Secretary of the Treasury explaining the grounds for requesting a reconsideration and an administrative hearing, but the Secretary again considered them insufficient and so notified the taxpayer on January 27, 1954. The taxpayer took no further action. On March 10, 1954, the Secretary of the Treasury, without granting the reconsideration and administrative hearing, notified the taxpayer of his final determination confirming the deficiencies notified.

The taxpayer timely filed a complaint in the Superior Court, alleging that the Secretary of the Treasury had erred in notifying the deficiencies in litigation and urging their annulment. After an incident on the bond issue, the Superior Court set April 5, 1955 for the hearing of the case on the merits. At that hearing the petitioner raised for the first time the lack of jurisdiction of the court, alleging that the "Secretary of the Treasury had not held the administrative

hearing provided by § 57–A of the Income Tax Act of 1925, as amended."

On May 16, 1956, the Superior Court entered an order overruling the question of jurisdiction raised by plaintiff therein. To review this order, we issued the present writ of certiorari.

 Petitioner's contention is that the refusal of the Secretary of the Treasury to grant him an administrative hearing renders void the final determination of the deficiency and, consequently, that the Superior Court lacks jurisdiction on the matter. We believe, however, that we need not determine here whether under the provisions of § 57 (a) of the Income Tax Act, as amended by Act No. 230 of 1949 (Sess. Laws, p. 706),[1] the Treasurer was bound to grant a hearing to a taxpayer to whom notice is given of a deficiency and applies in writing for a reconsideration and administrative hearing, setting forth in his application the reasons he may have therefor.

The granting of an administrative hearing under above circumstances is not a prerequisite to vest the Superior Court with jurisdiction in an income-tax case. Act No. 328, approved May 13, 1949 (Sess. Laws, p. 996), created the Tax

---

[1] This section provided:

"Section 57 (a).—If, in the case of any taxpayer, the Treasurer determines that there is a deficiency in respect to the tax levied by this title, the taxpayer, except as provided in subdivision (c), shall be notified of such deficiency by registered mail, and the taxpayer may, within thirty (30) days following the date on which said notification was mailed, or within such extension of time as the Treasurer may grant to him for the purpose, apply in writing to the latter, for a reconsideration of and an administrative hearing on the matter, setting forth in his application the reasons he may have therefor. If the taxpayer does not apply for a reconsideration in the manner and within the term herein provided, or if after having applied for same the Treasurer should confirm in whole or in part the deficiency notified, the Treasurer shall in both cases notify the taxpayer by registered mail of his final decision, and the taxpayer may appeal from said final decision to the Tax Court of Puerto Rico in the manner, within the term and upon compliance with the requirements provided by law."

Court of Puerto Rico and established its jurisdiction.[2] In this connection, § 2 of that Act provides as follows:

"Section 2.—In addition to the jurisdiction therein vested by special laws, the Tax Court of Puerto Rico shall have exclusive jurisdiction to take cognizance of all cases, actions and proceedings, or special or extraordinary remedies, in connection with, or affecting, the levy, collection and payment of all kinds of taxes, including property taxes, inheritance and gift taxes, income taxes, unfair profiteering taxes, social insurance taxes, excises, license taxes, and any other taxes or imposts, as well as to take cognizance of claims for taxes collected by unlawful procedure or which voluntarily, or without notice from the Treasurer of Puerto Rico were paid unduly or in excess, the reimbursement of which is authorized by law and is refused by the Treasurer of Puerto Rico; *Provided, however, That this jurisdiction may not be pleaded before the court by any person until there has been a proper administrative decision in the matter on the part of the Treasurer of Puerto Rico* in accordance with law. . . ." (Italics ours.)

On the other hand, Act No. 235, approved May 10, 1949 (Sess. Laws, p. 732), established a uniform procedure to appeal to the said Tax Court. In its § 2–A it provided that "whenever a taxpayer disagrees with a decision notified to him by the Treasurer of Puerto Rico and is by law entitled to appeal therefrom to the Tax Court of Puerto Rico, he shall do so in the manner, within the term, and upon compliance with the requirements herein provided, as follows:

"1. *Income Tax.*

"From a final determination of a deficiency notified in the manner provided for in section 57(a) of the Income Tax Act of 1924, . . . by filing complaint in the Tax Court of Puerto Rico, in the manner provided for by the law creating said court, within the term of thirty (30) days, from the date of mailing said notice of the final determination of the Treasurer of Puerto

---

[2] The Tax Court of Puerto Rico was abolished by the Judiciary Act of the Commonwealth of Puerto Rico (Act No. 11, approved July 24, 1952), and its jurisdiction was vested in the Superior Court.

Rico, after giving bond in favor of the latter and before him, subject to the approval of said official, . . ."

In this case the Treasurer notified the petitioner of the deficiencies by registered mail and, after considering that the application for reconsideration and administrative hearing made by the taxpayer was unfounded, he likewise notified the latter of his final determination. It was from this determination that the taxpayer, petitioner herein, appealed to the Superior Court after giving bond.

The petitioner argues "that according to the interpretation placed on § 57(a) in Puerto Rico, the Secretary of the Treasury may not levy or collect a deficiency until the taxpayer to whom a preliminary notice of a deficiency has been given moves for reconsideration, the Treasurer by administrative decision confirms the deficiency *after a hearing*, or the taxpayer sues in the Tax Court (now Superior Court) and that Court determines a deficiency." The cases of *Irizarry* v. *Tax Court*, 67 P.R.R. 896, and *Irizarry* v. *Tax Court*, 71 P.R.R. 178, invoked by the petitioner, do not support his theory. In the former case it was held, quoting from the summary, that "where after a reconsideration of a deficiency determination has been requested and obtained and an administrative hearing held, the Treasurer, as a result of such hearing, fixes a new deficiency based on facts different from those which gave rise to the first notice of deficiency, and in so doing he includes for the first time a penalty for fraud, the latter determination does not constitute an administrative decision of the review sought by the taxpayer but a new notice of deficiency, the reconsideration of which may be requested by the taxpayer." In the latter we said: "We thus see that under the ordinary procedure when a taxpayer is notified of a deficiency under § 57(a), the following may occur: (1) the taxpayer may not move for reconsideration within fifteen days; (2) the

taxpayer may move for reconsideration, the Treasurer by administrative decision confirms the deficiency and the taxpayer does not resort to the Tax Court; (3) the taxpayer moves for reconsideration, the Treasurer by administrative decision confirms the deficiency after a hearing, the taxpayer sues in the Tax Court, *and that court determines the existence of a deficiency.* The Treasurer must await the result of one of these three alternatives before he may levy and collect the deficiency under § 57(*b*)." 71 P.R.R. at 182. This is quite different from petitioner's contention. What we said in that case was that before the Treasurer may levy and collect the deficiency under § 57(*b*), he must await the result of one of the alternatives such as the taxpayer's motion for reconsideration and the Treasurer's administrative decision confirming the deficiency after a hearing. This was so because, according to § 57(*a*) then in force, the Treasurer was empowered to grant, in his discretion, a hearing whenever the taxpayer applied for a reconsideration of the deficiency notified to him, and once it was granted, he was expected to await his administrative decision before he could levy and collect such deficiency.

In this case, the Treasurer did not grant an administrative hearing, but, instead, he notified the taxpayer of his final determination in the manner provided by the law. Pursuant to the foregoing legal principles, the Superior Court had jurisdiction to take cognizance of the case and to review, by means of a hearing and upon considering the evidence of the parties, the deficiencies challenged by the taxpayer.

In view of the foregoing, the writ of certiorari is quashed with instructions to remand the original record to the Superior Court for further proceedings.

Mr. Justice Saldaña did not participate herein.